UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PEDRO PUCHE, and CARMEN ARISMENDY, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO NA d/b/a AMERICA'S SERVICING COMPANY, <br><br> Defendant. | OPINION <br><br> Civ. No. 16-05195(WHW)(CLW) |

**Walls, Senior District Judge**

Plaintiffs-homeowners bring suit against Defendant-mortgage loan servicer for their alleged failure to properly review and investigate errors made in the evaluation of Plaintiffs' application for a modification of their home loan. As a result of Defendant's denial of the loan modification application, a judgement of foreclosure was entered against Plaintiffs in a separate state court proceeding. Defendant now moves to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Decided without oral argument under Fed. R. Civ. P. 78, Defendant's motion is granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Pedro Puche and Carmen Arismendy are owners of a home located at 562 Barnett Place, Ridgewood. New Jersey. Compl., ECF No. 1 ¶ 1. Defendant Wells Fargo N.A. was, at all relevant times, the servicer of a mortgage on Plaintiffs' home. *Id.* ¶ 3. After failing to make their monthly mortgage payments, Plaintiffs' loan went into default on April 1, 2009.

1

Bender Cert. Ex. D, ECF No. 8-6 ¶ 7. On July 20, 2009, Defendant caused the investor on the loan, Deutsche Bank National Trust Company, to file a foreclosure proceeding against Plaintiffs in Bergen County Superior Court. Compl. ¶ 66.

During the pendency of the state court foreclosure action, the Consumer Finance Protection Bureau ("CFPB") promulgated new regulations affecting mortgage financing. *Id.* ¶ 9. Specifically, the CFPB issued Real Estate Settlement Procedures Act ("RESPA") Regulation X, 78 F.R. 10695, and Truth in Lending Act ("TILA") Regulation Z, 78 F.R. 10901. *Id.* ¶ 10. The new regulations went into effect on January 10, 2014. *Id.* These new rules imposed new obligations upon mortgage servicers including Defendant, a covered entity under 12 C.F.R. § 1024.2(b). Specifically, the new rules prevented mortgage servicers from moving for foreclosure sale if the homeowners had applied for loss mitigation to modify their loan. Mortgage servicers were also required to provide information requested by homeowners in the loan modification process, and correct or respond to errors that were brought to their attention. *Id.*

On April 18, 2014, Plaintiffs submitted a loss mitigation application to Defendant. Compl. ¶ 15. On January 16, 2015, Defendant denied Plaintiffs' loss mitigation application, informing Plaintiffs that they had not met the requirements of either Tier 1 or Tier 2 of the Home Affordable Modification Program ("HAMP"). *Id.* ¶ 16.

In response to this denial, Plaintiffs sent a number of Notices of Error ("NOEs") to Defendants under 12 C.F.R. § 1024.35. *Id.* ¶¶ 22, 38. These NOEs asserted that Defendant had incorrectly denied Plaintiffs' loss mitigation application by failing to correctly follow the steps for approval of a home loan modification under HAMP, as delineated in the Making Home Affordable Program Handbook for Servicers of Non-GSE Mortgages Version 4.4 ("MHA 4.4"). *Id.* Specifically, the NOEs asserted that Defendant had incorrectly calculated Plaintiffs' net

present value ("NPV"), *id.* ¶¶ 22-35, and had used an improper length of amortization. *Id.* ¶¶ 38-42.

Defendant responded to these initial NOEs on March 10, 2015. *Id.* ¶ 45. The response asserted that no errors had been made in the review of Plaintiffs' loss modification application, that Defendant had correctly calculated Plaintiffs' NPV, and used Plaintiffs' proposed amortization period of 480 months in their calculations. *Id.* ¶¶ 45-46.

On May 6, 2015, Plaintiffs sent a third NOE, pointing out the inconsistencies between the interest rate and amortization values cited by Defendant in its initial denial of Plaintiffs' application, and its response to the first two NOEs. *Id.* ¶¶ 51, 52. Defendant responded to this NOE on June 16, 2015, again asserting that no errors had occurred. *Id.* ¶ 53. An additional set of NOEs and corresponding responses were sent between Plaintiffs and Defendant with substantially similar claims made by both sides as in their previous correspondence. *Id.* ¶¶ 57-63.

On or about September 29, 2015, Deutsche Bank moved for final judgment in the foreclosure action in Bergen County Superior Court. Compl. ¶ 67.[1] Judgment was entered against Plaintiffs on November 10, 2015. Sup. Ct. Dckt. No. F-37929-09.

Plaintiffs brought suit in this district on August 26, 2016. Their Complaint alleges that by failing to conduct a reasonable investigation into whether an error occurred in Defendant's evaluation of their loss modification application, Defendant violated its statutory duties under RESPA 12 C.F.R. § 1024.35(b)(e), as well as the New Jersey Consumer Fraud Act and the covenant of good faith and fair dealing. Defendant Wells Fargo now moves to dismiss for lack of

---

[1] The Bergen County Superior Court Docket states that Deutsche moved for final judgment on October 9, 2015 whereas Plaintiffs' Complaint states that it was September 29, 2015. See Sup. Ct. Dkt. No. F-37929-09. Both dates are well before the present action was filed and after the conduct at issue in this case took place so the discrepancy is immaterial to our inquiry.

3

subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

### I. Motion to Dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) at any time. *New Jersey Protection & Advocacy, Inc. v. New Jersey Dep't of Education*, 563 F. Supp. 2d 474. 479 (D.N.J. 2008). Unlike a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), in a motion to dismiss for lack of subject matter jurisdiction, no presumption of truthfulness attaches to the allegations in the complaint and the court may consider matters outside the pleadings such as affidavits and other material properly before the court. *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999). In a Rule 12(b)(1) motion, "the Court is free to weigh the evidence and satisfy itself whether it has the power to hear the case." *Carpet Group Intern. v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (citing *Mortensen v. First Federal Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen*, 549 F.2d at 891. The plaintiff must not only demonstrate that a controversy existed at the time it filed suit but that it continues to exist throughout the litigation. *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992).

## II. Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

## DISCUSSION

### I. Lack of Subject Matter Jurisdiction

#### a. The *Rooker-Feldman* doctrine does not bar litigation of Plaintiffs' claims

Under the *Rooker-Feldman* doctrine, federal courts do not have the subject matter jurisdiction to review final judgments of state courts. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Defendant Wells Fargo argues that because a final judgment of foreclosure was entered against Plaintiffs in the New Jersey state court action before the filing of the present federal action, the *Rooker-Feldman* doctrine prevents this Court from exercising subject matter jurisdiction over this matter.

The *Rooker-Feldman* doctrine is implicated where, in order to grant the relief sought by a plaintiff, a federal court must determine that a state court judgment was erroneously entered, or must take action that would render that state court judgment ineffectual. *FOCUS v. Allegheny*

*County Court of Common Pleas*, 75 F.3d 834, 840 (3d Cir. 1996). Accordingly, in conducting a *Rooker-Feldman* inquiry, the Court asks if (1) the federal claim was already litigated in state court before the filing of the federal action, or (2) the federal claim is inextricably intertwined with the state adjudication. *In re Madera*, 586 F. 3d 228, 232 (3d Cir. 2009).

### *i. Plaintiffs' federal claims were not already litigated in state court*

Plaintiffs argue that their claims cannot possibly have already been litigated in state court because they are based upon conduct that took place after judgment was issued in the state court proceedings. Pl.'s Br., ECF No. 12 at 18. The CFPB regulations at issue did not come into effect until January 2014, and it would have been impossible for Plaintiffs to raise these claims before then. While initial judgment was entered in the foreclosure action in 2011, before the CFPB regulations at issue, this case is complicated by its unusual timeline. After foreclosure proceedings were initiated in Bergen County Superior Court in 2009, an initial judgment was entered in that case on October 26, 2010. However, judgment was deferred on January 6, 2011, when Plaintiffs opted to exercise their right to mediation. Final judgment was not actually entered in the state court action until November 10, 2015, a fact that Plaintiffs acknowledge in their Complaint. Bergen Cty. Ct. Dkt. No. F-37929; Compl. ¶ 67.

Consequently, Plaintiffs' assertions that their claims are based on conduct that occurred after the state court entered its final judgment – Wells Fargo's denial of their April 18, 2014 application for loss mitigation – are inaccurate and misleading. While *initial* judgment had been entered when the CFPB regulations came into effect and when Defendant's alleged violation of the regulations occurred, it is plainly incorrect to assert, as Plaintiffs do, that final judgment had already been entered at this point. *See* Pl.'s Br., ECF No. 12 at 18. When the conduct that underlies Plantiffs' claims occurred, all relevant parties were engaged in mediation and it is

entirely plausible that Plaintiffs could have raised these issues there. However, with no information about what transpired during mediation, we are unwilling to accept Defendant's argument that these claims were necessarily litigated in state court. *See* Def.'s Reply Br., ECF No. 14 at 4-5. Without this knowledge, we cannot infer that Plaintiffs' claims were already litigated in the state court action.

### ii. Plaintiffs' claims are not inextricably intertwined with the state court's judgment

Federal claims are considered "inextricably intertwined" with a state court adjudication when, in order to grant the relief sought, a federal court must determine that the state court decision was incorrect, or must take action that would render the state court's judgment ineffectual. *FOCUS*, 75 F.3d at 840 (citing *Marks v. Stinson*, 19 F.3d 873, 886 (3d Cir. 1994)).

The Plaintiffs in this matter do not seek to have the judgment of the state court in the foreclosure action reversed. Plaintiffs seek only damages for Defendant's alleged violation of its statutory and contractual obligations to review and investigate any errors made in the evaluation of Plaintiffs' loss mitigation application. *See* Compl., ECF No. 1. If granted, damages would not render the state court's judgment ineffectual. Nor would a finding that Defendant had violated its duty to properly review Plaintiffs' application invalidate the judgment of foreclosure already reached by the state court.

A number of other courts have reviewed similar claims under RESPA, and found that these claims did not create a *Rooker-Feldman* issue with respect to related state court foreclosure judgements. In *Siljee v. Atlantic Stewardship Bank*, plaintiffs filed suit in federal court following a final entry of judgment in a state court foreclosure action. Amongst other claims, plaintiffs alleged that the defendant mortgage servicer had violated RESPA by failing to respond to a

7

Qualified Written Request for information. 2016 WL 2770806 at *2 (D.N.J. May 12, 2016). Finding that plaintiffs' RESPA claims did not implicate *Rooker-Feldman*, the court held that "non-compliance with RESPA does not implicate the validity of the mortgage . . . it is not inconsistent with the existence of a final judgment of foreclosure." *Id.* at *5. *See also Bowen v. Bank of America*, 2015 WL 1968974 (D.N.J. April 30, 2015) (RESPA violation claims do not implicate *Rooker-Feldman*). In *Nivia v. Nation Star Mortgage*, the Eleventh Circuit found that plaintiffs seeking damages for violations of the same HAMP loss mitigation regulations at issue in the case before us now "neither seek to undo the effect of the foreclosure judgment nor make arguments that would undermine its validity." 620 F. App'x 822, 824 (11th Cir. 2015). Damages, if awarded, would not nullify the state court's foreclosure judgment, because it would not challenge the transfer of the real property effectuated by the foreclosure. *Id.* Further, the court held that the failure of a mortgage lender to fulfill its statutory duties does not invalidate a foreclosure that results from that failure. *Id.* at 825.

Because Plaintiffs seek only damages, there is no question that a finding for them in this Court would not render the state court's judgment ineffectual. As in *Nivia*, an award of damages in this case would not effect transfer of the real property effectuated by the foreclosure. Nor would it imply that the state court's decision was incorrect. Violations of RESPA, or of Defendant's contractual duty of good faith and fair dealing, do not implicate the validity of the foreclosure judgment. Had Defendant evaluated Plaintiffs' loss mitigation application differently, this might have had the effect of staying the foreclosure proceedings. However, the fact that they did not, does not mean that the state court erred in its judgment. The state court acted based on the factual circumstances that existed at the time of its judgment. A finding that those factual circumstances might have been different had the Defendant followed the law does

FOR PUBLICATION

not mean that the state court's evaluation of those circumstances was incorrect or invalid.

Plaintiffs' federal claims are not inextricably intertwined with the previous foreclosure adjudication of the state court. Consequently, the *Rooker-Feldman* doctrine does not bar our consideration of this matter.

## II. Failure to state a claim under Fed. R. Civ. P. 12(b)(6)

### a. New Jersey's Entire Controversy Rule prevents Plaintiffs from raising their claims in this Court

Motions to dismiss based on New Jersey's entire controversy rule are properly considered as motions to dismiss under Fed. R. Civ. P. 12(b)(6). *Mason v. U.S. Bank*, 2016 WL 7189828 at *4 (D.N.J. Dec. 16, 2016); *Rycoline Prod v. C&W Unlimited*, 109 F. 3d 883, 886 (3d Cir. 1997). New Jersey's entire controversy rule, codified as New Jersey Rules of Court Rule 4:30A, requires parties to bring in a single action, all claims and defenses arising out of the underlying factual circumstances. N.J. Ct. R. 4:30A; *see also Wadeer v. New Jersey Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015) ("adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy."). The entire controversy rule applies in federal court where there has been a previous state court action involving the same transaction. *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991). A party may not withhold part of a controversy for a later litigation, even if the withheld component is a separate and independently cognizable cause of action. *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999). In the context of foreclosure proceedings, the entire controversy doctrine extends only to those counterclaims that are "germane" to the

foreclosure. N.J. Ct. R. 4:64-5; *Leisure Tech. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 358 (App. Div. 1975).

Under this rule, Plaintiffs ought to have raised their present claims in the state court foreclosure action. Having failed to do so, they are barred from raising them now in this separate action. However, Plaintiffs argue that the entire controversy rule does not operate to prevent them from raising their claims now, because these claims were unripe, unaccrued and unknown at the time of the state court litigation; and because Defendant Wells Fargo was not a party to the foreclosure action.

### *i. Plaintiffs' claims were not unknown, unripened or unaccrued during the state court litigation*

The entire controversy doctrine does not apply to bar claims that were unknown, unripened or unaccrued at the time of the original action. *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008) (citing *Mystic Isle Dev. Corp. v. Perskie*, 142 N.J. 310 (1995)). But the claims now raised by Plaintiffs accrued, ripened, and became known to them during the pendency of the state court foreclosure action. If, during the pendency of litigation, claims arise which are part of the entire controversy, the claimant *must* seek leave to file supplemental pleadings. If the claimant fails to do so, they are then barred from raising those claims in a subsequent suit. *McNally v. Providence Washington Ins. Co.*, 304 N.J. Super. 83, 92 (App. Div 1997).

Plaintiffs' argument that their claims were not ripe until April 2014, five years after the commencement of the litigation in the foreclosure action is immaterial here. All of their claims became ripe during the pendency of the state court action, before a final judgment was entered in November 2015. Under the entire controversy doctrine, they had an obligation to seek leave from

the state court for leave to raise these issues. They did not do so, and consequently are barred from raising those claims now in this separate action.

### ii. *Plaintiffs were required to raise their claims in the state action even though Wells Fargo was not a party*

Plaintiffs are not excused from the requirements of the entire controversy rule because Defendant Wells Fargo, the loan servicer, was not a party to the foreclosure action initiated by Deutsche Bank, the investor on the loan. Plaintiffs correctly assert that Rule 4:30, now Rule 4:30A, was modified by the New Jersey Civil Practice Committee to apply only to the mandatory joinder of claims and not of parties. However, they fundamentally misunderstand or misstate the effect of this modification on the operation of the entire controversy rule. The 1998 modification of the entire controversy rule replaced the joinder requirement with a disclosure requirement. *Kent Motor Cars, Inc. v. Reynolds and Reynolds, Co.*, 207 N.J. 428, 444 (2011). That is to say, parties to an action are now required to reveal to the court the existence of any non-party who might have any potential liability to any party, arising out of the same transactional facts. *Id.* (citing to N.J. Ct. R. 4:5-1(b)(2), adopted in 1998 in response to the modification of Rule 4:30). This disclosure obligation attaches at the filing of the first pleading and continues throughout the pendency of the litigation. If circumstances change, and potential claims against a non-party arise during the pendency of the litigation, parties are obligated to disclose these claims to the court. *Id.* at 444–45. It is then up to the court to decide whether to compel the joinder of that party. Courts may use their discretion to preserve claims against non-joined parties for separate litigation without running afoul of the entire controversy rule. *Id.*

Consequently, the modification of the party joinder aspect of the entire controversy rule does not operate to excuse litigants from the rule's requirements simply because their related

claims are against a non-party. Rather, instead of being required automatically to join those parties against whom there are related claims, parties now must raise the issue with the court first. Plaintiffs do not claim that they disclosed their related claims against Wells Fargo in the Bergen County Superior Court. Had they done so, the court might have allowed them to preserve those claims for a separate, later litigation. But, having failed to do so, they are barred by the entire controversy rule from attempting to raise those claims now.

Furthermore, even as modified, Rule 4:30A still requires that all causes of action arising out of the same set of facts be litigated in the same proceeding. *J-M Mfg. Co., Inc. v. Phillips & Cohen, LLP*, 443 N.J. Super. 447, 454 (App. Div. 2015). This is true wherever there is a core set of facts underlying distinct claims against the same *or different* parties. *See e.g., Wadeer v. New Jersey Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015) ("the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions."); *In re Frazier*, 435 N.J. Super. 1, 9 (App. Div. 2014). Plaintiffs' claims arise out of the same mortgage transaction that was at issue in the state foreclosure action. In their Complaint, Plaintiffs assert that had Defendant properly reviewed their loss mitigation application, the foreclosure proceedings would have been dismissed. Compl., ECF No.1 ¶¶ 69, 73. It is clear that even in the minds of the Plaintiffs, the state court action and their present claims arise out of the same set of factual circumstances. While the modified entire controversy rule did not automatically require Plaintiffs to join all possibly relevant parties, Plaintiffs were still required to disclose the existence of potential counterparties to the court, and they were still required to raise all related claims in the state court proceeding.

### *iii. Plaintiffs' claims were germane to the foreclosure proceeding*

The entire controversy doctrine is more limited in scope when applied to foreclosure proceedings. *See* N.J. Ct. R. 4:64-5. Rule 4:64-5 limits the application of the entire controversy rule to only those claims in mortgage foreclosure actions that are "germane" to the foreclosure. *Id.* Germane claims are defined as those "arising out of the mortgage transaction which is the subject of the foreclosure action." *Leisure Tech. v. Klingbeil Holdings Co.*, 137 N.J. Super. 353, 358 (App. Div. 1975). Claims that loan servicers violated their statutory duties under RESPA are germane to foreclosure proceedings on the mortgaged property. *See Siljee*, 2016 WL 2770806 at *10 (finding the entire controversy doctrine barred plaintiff's RESPA claims where there had already been a foreclosure proceeding in state court). Where the previous start court action involves the same transaction – a mortgage and then a default on that mortgage – as the later federal action, the subject matter of the earlier action necessarily "embraces" that of the federal action. *Id.* All of Plaintiffs' claims in this action arise out of and relate directly to the original mortgage transaction. Their claims are germane to the state foreclosure action, and consequently should have been raised in that proceeding. The entire controversy doctrine bars Plaintiffs from raising these claims now, in a separate proceeding.

## CONCLUSION

The *Rooker-Feldman* doctrine would not have prevented this Court from exercising its subject matter jurisdiction over Plaintiffs' Complaint. However, New Jersey's entire controversy rule prevents Plaintiffs from raising their claims in this Court, where they ought to have been raised in the earlier state court proceeding. Defendant's motion to dismiss for lack of subject matter jurisdiction is granted. An appropriate order follows.

FOR PUBLICATION

DATE: 22 June 2017

Hon. William H. Walls
Senior United States District Court Judge